AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Tomika N.S. Patterson)    #15-102

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. /5- //93- M |
| CARL ALEXANDER SIMMONS | ) | FILED |
| | ) | NOV - 2 2015 |
| | ) | MICHAEL E. KUNZ, Clerk |
| *Defendant(s)* | ) | By _____ Dep. Clerk |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **October 30, 2015** in the county of **Montgomery** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 115(a)(1)(B) | The defendant knowingly threatened to assault a United States official, or an official whose killing would be a crime under Title 18, United States Code, Section 1114, with intent to impede, intimidate, or interfere with such official, while engaged in the performance of official duties, or with intent to retaliate against such official on account of the performance of official duties |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Matthew J. Gleason, attached as Attachment 1, and incorporated herein

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Matthew J. Gleason, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/2/2015

_____
*Judge's signature*

City and state: Allentown, PA          Honorable Henry S. Perkin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

FILED

I, Matthew J. Gleason, being duly sworn, states as follows:

NOV - 2 2015

## INTRODUCTION

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

1.  I am a Special Agent of the Federal Bureau of Investigation ("FBI"). I have been employed with the FBI since July 27, 2015. I am currently assigned to the Philadelphia Division and work out of the Allentown Resident Office. Prior to my employment with the FBI as a Special Agent, I served as a police officer with the Manchester, New Hampshire Police Department from August 5, 2013 to July 27, 2014. As part of my duties, I prepared numerous affidavits in support of arrest warrants. Additionally, prior to my service as a police officer, I honorably served five years as a soldier in the United States military.

2.  As a FBI Special Agent, I have participated in various criminal investigations of a violent and non-violent nature, including investigating threats to federal officials. I also received specialized training in conducting criminal investigations. Additionally, I have assisted in drafting affidavits for search and seizure warrants and participated in the execution of arrest warrants as well as search and seizure warrants.

3.  I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4.  This affidavit is made in support of a criminal complaint charging Carl SIMMONS, with knowingly threatening to assault a United States official, or an official whose killing would be a crime under Title 18, United States Code, Section 1114, with the intent to impede, intimidate, or interfere with such official, while engaged in the performance of official duties, or with intent to

1

retaliate against such official on account of the performance of official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B).

5. I have participated in the investigation related to this affidavit since its inception. I have interviewed numerous witnesses, the victim, and the subject pertaining to this case. I have reviewed all of the facts and evidence gathered during this investigation and reviewed the relevant federal statute, 18 U.S.C. § 115, pertaining to this case. The information within this Affidavit does not include every fact known to me as part of this investigation but only those facts sufficient to establish probable cause.

**DETAILS OF THE INVESTIGATION**

6. On April 22, 2015, Special Agent Bernard Callibuso and I met with Simmons in-person at the FBI Allentown Office. On that day, Simmons walked into the FBI Allentown Office and stated that he had proof of government corruption. However, during the interview, I discovered that Simmons did not have proof of corruption, but rather believed he had a dispute with the Equal Employment Opportunity Commission ("EEOC") which appeared to be civil in nature. During the interview, Simmons stated that, although he suffered from bipolar syndrome and schizophrenia, he was a competent person who did not need the assistance of a lawyer. Simmons further remarked that he was a born-again Christian who would not let the government make him into a "Ted Bundy." I informed Simmons that I would follow-up on some of the information he provided.

7. After investigating the information provided by Simmons, I discovered that Simmons had not been forth coming during our interview. Specifically, I learned from Special Agent Lisa Lewis of the EEOC, located at 131 M Street, NE, Washington, DC 20507, that Simmons filed a complaint with the EEOC which was resolved in 2002. The EEOC notified Simmons in writing

2

that the EEOC received his complaint, reviewed his case, and denied his case in 2002. Nevertheless, since October 2014, Simmons persisted in calling EEOC Inspector General Mayo, leaving numerous messages and demanding money compensation. Additionally, the EEOC barred Simmons from all EEOC offices on February 19, 2014 due to his persistent intimidating, excessive, and harassing communications to various EEOC offices after his case was denied. Despite the ban, Simmons showed up in person in July 2015 with two additional men to the EEOC office in Washington D.C. where Inspector General Mayo works.

8. In May 2015, due to the facts that I discovered through my investigation of Simmons' information, I spoke with Simmons over the phone and informed him that the FBI would not be moving forward in a criminal investigation based on his claims. I further advised Simmons to stop calling the EEOC and seek the assistance of an attorney to pursue the matter civilly.

9. On September 9, 2015, I received a phone call from Special Agent Lewis that Carl Simmons called the direct phone line of EEOC Inspector General Milton Mayo. She explained that Simmons had left a voicemail message in which he allegedly threatened Inspector General Mayo. I requested Agent Lewis to email a digital audio copy of the message left by Simmons on Inspector General Mayo's voicemail.

10. On September 10, 2015, I received the digital audio copy of the voicemail message from Special Agent Lewis. I reviewed the message and, based on my prior communications with Simmons, identified the voice as belonging to Simmons. During the voicemail message, Simmons sounded angry and proclaimed to Inspector General Mayo that he was "Ted Bundy." Simmons further stated to Mayo that Simmons wanted his money, that Mayo messed with the wrong "nigger," and that Simmons was coming into Inspector General Mayo's place of employment with the "Feds." Simmons reiterated multiple times in his recorded message that he

was coming to Inspector General Mayo's building in Washington, D.C. and that he was coming for Inspector General Mayo.

11. On September 28, 2015, Simmons called the Allentown FBI office and I spoke with him. During our conversation, I asked Simmons if he called Inspector General Mayo. Simmons refused to answer my questions and told me multiple times that he was aware of what I was trying to do by asking him questions about calling Inspector General Mayo. Simmons further added that he would not incriminate himself by answering my questions.

12. On October 20, 2015, I received a message on my FBI office voicemail from Simmons. During the message, he claimed that he was at the Horsham Clinic and his psychiatrists supported his claims against the EEOC. Simmons requested that I call the Horsham clinic to speak with his social worker in order to arrange a meeting with me or Philadelphia FBI agents to further investigate his claims against the EEOC.

13. On October 21, 2015, I called the Horsham Clinic located in Ambler, PA and spoke with social worker Mary Beth McDowell. McDowell informed me that Simmons checked himself into the clinic. Originally Simmons told the clinic workers that he was checking himself into the clinic to receive medical help, but eventually it became apparent to the doctors that Simmons' true reason for his admission was to try and convince doctors to provide him a letter in support of his case against the EEOC, specifically Inspector General Mayo. McDowell informed me that Simmons told doctors that he intended to travel with family members to Inspector General Mayo's office to see Inspector General Mayo upon leaving the Horsham clinic.

14. On October 28, 2015, I learned during a phone conversation with McDowell, Simmons told doctors at the Horsham clinic that he still intended to go to Virginia. Simmons also told doctors that they would not know how or when he will go to Virginia. McDowell noted that

4

when Simmons was asked to expand upon his comments to doctors, he told them that he would not incriminate himself.

15. On October 30, 2015, FBI Agents from the Fort Washington Resident Agency visited the Horsham clinic upon my request. The agents advised Simmons not to travel to the EEOC office in Washington D.C., and, if he persisted in traveling to the EEOC office, he would be subject to possible criminal prosecution due to the ban in place. They also advised Simmons to refrain from contacting Inspector General Mayo. Simmons told the agents that he would respect their advice and not travel to Inspector General Mayo's office or communicate with him.

16. Shortly after the FBI Agents left the Horsham Clinic, at approximately 1:30 p.m., I received a call from McDowell. McDowell advised that immediately after the FBI agents left the Horsham clinic, Simmons told McDowell that he would not listen to the FBI agents. Simmons told McDowell that "next week is show time", and "there is more than one way to skin a cat". Simmons later told a doctor at the Horsham Clinic that "one person he is going to the office with is able to carry a gun." McDowell followed up with Simmons regarding his comment about his friend that could carry a gun, and Simmons refused to expand upon his comments or identify the person with whom he intended to travel to the EEOC.

## CONCLUSION

17. Based on the facts and circumstances presented above, and based upon my investigative training, I have probable cause to believe Carl Alexander SIMMONS knowingly threatened to assault a United States official, or an official whose killing would be a crime under Section 1114, with intent to impede, intimidate, or interfere with such official, while engaged in the performance of official duties, or with intent to retaliate against such official on account of the

performance of official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B).

I therefore request the issuance of Criminal Complaint and Warrant for Arrest.

MATTHEW J. GLEASON
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed
before me this 2d day of
November, 2015

HONORABLE HENRY S. PERKIN
*United States Magistrate Judge*